[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Paul F. Jacobson, pursuant to General Statutes 12-118, from a decision of the defendant Town of Westport Board of Tax Review. The plaintiff's property at 96 Myrtle Avenue in Westport is one-half acre in size, and is situated next door to the Westport Town Hall. The property is in the residential A zone and consists of a one-family residential structure, including a law office for the plaintiff, who is an attorney, plus a detached two-car garage.
The assessor of the Town of Westport revalued all property in the town as of October 1, 1985, and determined that the new assessment for the plaintiff was $352,730 ($115,500 for the land, $231,690 for the residence/law office, and $5540 for the garage) which, at a rate of 70%, translated into a fair market value of $503,900. General Statutes12-64.[1] The plaintiff appealed this new assessment to the defendant Board; General Statutes 12-111; which refused to reduce the assessment and this appeal followed. The plaintiff subsequently amended his complaint to include a challenge to the assessed valuations on the grand lists of October 1, 1987, 1988, 1989, 1990, and 1991. General Statutes 12-118.
The standard of review in an appeal pursuant to General Statutes12-118 was set out in detail in Stamford Apartments Co. v. Stamford,203 Conn. 586, 588-89, 525 A.2d 1327 (1987), as follows (i) the case is heard de novo; (ii) the plaintiff has the burden of proving that the defendant assessor's valuation is excessive; (iii) this burden is a "difficult" one because "proper deference" as well as a "wide discretion" must be accorded to the assessors; (iv) but there is no presumption in favor of the assessor's valuation which needs to be rebutted by the taxpayer; and (v) the court's task is to determine whether the property has been "substantially overvalued," and if so, then to ascertain the true and actual value of the plaintiff's property. CT Page 7394
As was said in Midway Green Corporation v. Board of Tax Review,8 Conn. App. 440, 442, 512 A.2d 984 (1986), "[o]nly if the court finds that the property has been overvalued by the assessor can it exercise its power to correct the valuation." According to Executive Square Limited Partnership v. Board of Tax Review, 11 Conn. App. 566, 570,528 A.2d 409 (1987), "[i]f the court finds that the property has been in fact overvalued, it has the power to, and should, correct the valuation. . . Mere overvaluation is enough to justify redress under 12-118." General Statutes 12-63 indicates that the standard for valuation is the property's "present true and actual valuation," which is synonymous with "market value, actual value, fair market value, market value and fair value. . ." Uniroyal. Inc. v. Board of Tax Review182 Conn. 619, 623 n. 3, 438 A.2d 782 (1981). "Fair market value" is defined as "the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal." Uniroyal, Inc. v. Board of Tax Review,174 Conn. 380, 390, 389 A.2d 734 (1978).
Second Stone Ridge Cooperative Corporation v. Bridgeport, 220 Conn. 335,342, 597 A.2d 326 (1991), indicates that "[a]t least four methods exist for determining the fair market value of property for taxation purposes: (1) analysis of comparable sales; (2) capitalization of gross income; (3) capitalization of net income; and (4) reproduction cost less depreciation and obsolescence." Although all of these methods have been approved for valuing property, comparing market sales is ordinarily the best method for determining actual value, according to Uniroyal, Inc. v. Board of Tax Review, 174 Conn. 380, 385-86, 389 A.2d 734
(1978), Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669, 674,154 A.2d 608 (1959).
The plaintiffs' appraiser testified that in his opinion the fair market value of the subject premises on October 1, 1985 was $337,500, rather than $503,000, a difference of about one third. This would mean an assessed value of $236,250. He used three comparable sales in arriving at his conclusion of value, two of which were within sixty days of the assessment date of October 1, 1985.
In this case, the appraiser employed by Westport, United Appraisal Co., of Dayton, Ohio, did not testify at the trial. In addition, no formal appraisal was ever made of plaintiff's property, and the method used was not based on comparable sales. The appraisal company made up a "residential pricing schedule" based on replacement costs, which are then adjusted to approximate market value. The adjustment is done by sample testing of actual sales to determine if there is a satisfactory correlation. This was described as a "market adjusted cost approach."
It is the court's opinion that, under the circumstances of this case, the most accurate indicator of value of the subject premises, as of October 1, 1985, was the sale which occurred only seven days before the assessment date at issue at 22C Cross Highway for $347,000. This property CT Page 7395 is located only one-half mile away, and contains the exact same acreage. The house, also a colonial, was of "good" quality of construction, condition, and functional utility. Plaintiff claimed his premises needed a lot of repair work, and was only of "average" quality with respect to those three factors. However, the plaintiff refused access to his home to the assessors's office, and that official's characterization of the quality of construction as "A+" can stand, particularly in the light of the 1983 renovation of his home by the plaintiff.
Again, each residence, the subject premises and 22C Cross Road, had twelve rooms, and a two-car garage, but plaintiff's property, according to his appraiser, has more gross living area, 3423 square feet, compared with 2528 square feet. The total adjustment by the plaintiff's appraiser amounted to $5480 in favor of the property on Cross Highway, meaning that the fair market value of the subject premises would be $341,520 ($347,000 minus $5480). Based on the marked similarity of these two properties, but deleting the $35,000 adjustment regarding the quality of construction as discussed above, leads to the conclusion that $376,520 more accurately reflects the fair market value of plaintiff's property. This figure is arrived at by using the adjustments of plaintiff's expert, except for the $35,000 regarding condition and construction ($347,000 plus $29,520 equals $376,520).
Although mindful of the lack of precision inherent in the assessment process, Second Stone Bridge Cooperative Corporation, supra, 342, this court therefore concludes that the plaintiff has met his burden of proving that defendant's valuation of his property is in fact substantially overvalued and thus illegal. As a result, plaintiff is deemed to be aggrieved. Gorins, Inc. v. Board of Tax Review,178 Conn. 606, 608, 424 A.2d 282 (1979). See also Pepe v. Board of Tax Review, 14 Conn. App. 705, 709, 542 A.2d 756 (1988) ("over-valuation justifies redress under General Statutes 12-118"). Having found aggrievement, we must by trial de novo answer "the ultimate question (which) is the ascertainment of the true and actual value of the applicant's property." O'Brien v. Board of Tax Review, 169 Conn. 129,130-31, 362 A.2d 914 (1975). General Statutes 12-118 expressly provides broad discretionary power to grant such relief, whether legal or equitable, ". . . upon such terms and in such manner and form as appears equitable. . ." The court is "not limited to arbitrating the differing opinions of the witnesses. . .," but rather our task is to "make determinations in the light of all the circumstances. . ." Lamont v. New Hartford, 4 Conn. App. 303, 305, 493 A.2d 298 (1985). Another formulation of a court's task in this context is found in Whitney Center, Inc. v. Hamden, 4 Conn. App. 426, 439, 494 A.2d 624 (1985), "(w)hen confronted with conflicting evidence as to valuation, the trier may properly conclude that under all the circumstances a compromise figure most accurately reflects fair market value." (citations omitted). See also Four D's, Inc. v. Mattera, 25 Conn. App. 308, 316, 594 A.2d 484
(1991) (valuing real property "is a matter of opinion based on all the CT Page 7396 evidence and, at best, is one of approximation") (citations omitted).
I therefore find that the fair and actual market value of the plaintiff's property was, as of October 1, 1985, $376,520. Thus the property was overvalued, and the appeal of the plaintiff is sustained as he is aggrieved. Judgment may enter establishing $263,564 as the assessed value of the subject premises for October 1, 1985, representing 70% of market value, and also for subsequent years. The plaintiff is entitled to a refund or credit for excess payments, if any, which may have been paid to the Town of Westport.
So Ordered.
Dated at Bridgeport, Connecticut, this 5th day of August, 1992.
WILLIAM B. LEWIS, JUDGE