[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
This is an appeal brought by the plaintiff, Yvonne Gottlieb, pursuant to General Statutes, Section 7-250. The plaintiff contests an assessment of sewer benefit to her property known as 50 Mountainview Terrace in the Town of North Branford. The defendant, the North Branford Water Pollution Control Authority ("WPCA") filed the said assessment on the subject property in the amount of $12,300.00 on November 22, 1994.
The plaintiff has established aggrievement for the purpose of taking this appeal in that she owned the subject property at the time the defendants levied the assessment on issue.
The plaintiff contends that the special benefit assessment levied by the defendant WPCA was grossly in excess of any special benefit accruing to her property as the result of the installation of a sanitary sewer system.
The defendants counter that not only is the assessment amount of $12,300 supported by the evidence but that the special benefit accruing to the subject property is $27,000. The defendant asks this court to alter the assessment accordingly.
II CT Page 11554
The defendant WPCA levied the assessment at issue pursuant to General Statutes, Section 7-249 which provides in pertinent part: "At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby . . ., and upon the owners of such land and buildings, according to such rule as the water pollution control authority adopts . . ." And further, "No assessment shall be made against any property in excess of the special benefit to accrue to such property."
The benefit to a property owner is measured solely according to the amount by which the improvement causes the property to increase in market value, Shoreline Care Limited Partnership v.Town of North Branford, 231 Conn. 344, 351.
The monetary value of the special benefit conferred must be calculated by the difference between the market value of the realty with and without the sewerage system, Tower Business ParkAssociates Number One Limited Partnership v. Water PollutionControl Authority, 213 Conn. 112, 118. Bridge Street Associatesv. Water Pollution Control Authority, 15 Conn. App. 140, 144,543 A.2d 1351 (1988).
A property need not be connected to the system in order for it to receive a benefit, Shoreline Care Limited Partnership v.Town of North Branford, supra, at 351, 352.
In an appeal from a sewer assessment there is a presumption as to the regularity, validity and correctness of the special benefit assessment that imposes the burden of proof on the property owner challenging the assessment, Shoreline CareLimited Partnership v. Town of North Branford, supra, at 350.
 III
The subject property, 50 Mountainview Terrace, is located in the "White Hollow" neighborhood of North Branford. The plaintiff has owned the subject property, initially with her husband and since his death in 1973, outright, since May 5, 1959. The plaintiff has resided there continuously for 38 years. This property is serviced by an individual septic system installed at CT Page 11555 least 38 years ago.
The residence sits on a lot measuring 16,553 square feet. The lot is steeply sloped upward from front to rear. Water is obtained from a well located under the driveway.
At the time the Gottliebs purchased this property, the house contained two bedrooms and one bathroom. Subsequently, the Gottliebs added two bedrooms and a half-bathroom in the converted attic and later the basement area was converted into two additional bedrooms and a bathroom. The residence now contains 6 bedrooms and 2 1/2 bathrooms.
Since 1959, a maximum of six people has occupied the dwelling at any time. Currently, three people reside in the dwelling, plaintiff and two tenants.
The septic system has operated satisfactorily over 38 years and is in use today. In 1987 the plaintiff noticed "soft spots" in the area of the leaching field and improved and expanded the septic system at that time. The septic tank servicing the property has a capacity of some 900 gallons. The public health code in effect in 1994 requires a septic tank capacity of at least 1,750 gallons for a six bedroom residence. (Defendant's Exhibit #27, p. 26). The septic system does not conform to code in certain other respects, including its proximity to the residence, its proximity to a neighbor's well and to plaintiff's property line.
 IV
The "White Hollow" neighborhood consists of some 450-500 homes and is located in the northeastern section of North Branford between Route 17 (Middletown Avenue) and the Durham town line. Prior to the construction of a sanitary sewer system, completed in 1994, all residences in the neighborhood were served by septic systems.
The "White Hollow" neighborhood has long been a source of concern regarding inadequate and malfunctioning septic systems. As far back as 1971, a "Sewage Feasibility Study" commissioned by the town identified the neighborhood as a "pollution source"[1]
This study found that, "The worst source of pollution in town is the developed area between White Hollow Road and the Durham town line."[2] Subsequent studies and Department of Environmental CT Page 11556 Pollution (DEP) orders continued to identify the White Hollow neighborhood as one having sewerage problems, culminating in the DEP Commissioner's Order #4890[3], dated November, 1989, finding that a community pollution problem exists, and directing the town to take action to eliminate sources of pollution caused by failing septic systems in the White Hollow area and setting a timetable for compliance. The court finds that the White Hollow neighborhood had over a long period of time from at least 1971 to 1990, been publicly and repeatedly identified as a neighborhood with pollution problems stemming from inadequate and malfunctioning septic systems.
 V
The plaintiff attacks the "presumption of validity" accorded this special benefit assessment, focusing on the method used by the defendant WPCA to calculate said assessment. This court is not persuaded. General Statutes, Section 7-249 does not dictate a formula to be utilized in arriving at a benefit assessment. The statute authorizes a WPCA to levy such assessments, "according to such rule as the water pollution control authority adopts." The statute imposes a limitation, not on the methodology used by a WPCA, but on the result of its calculation: "No assessment shall be made against any property in excess of the special benefit to accrue to such property."
 VI
To support her claim that the defendant WPCA's assessment of sewer benefits on her property was grossly in excess of the special benefit conferred, the plaintiff relied on the appraisal submitted by Arthur B. Estrada. (Plaintiff's Exhibits "A" and "I")
The defendants offered the appraisal submitted by Ronald B. Glendinning (Defendants' Exhibit 14). The court is free to accept and reject portions of each appraiser's testimony, Eichman v. J. J. Building Company, 216 Conn. 443, 452; Whitney Center, Inc.v. Hamden, 4 Conn. App. 426, 430.
Both appraisers sought to measure and compare the market value of the subject property before and after the installation of the sanitary sewer system. Both appraisers used a sales comparison approach, although their methodologies differed. CT Page 11557
Mr. Estrada compared the subject property with sales of three North Branford residential properties prior to installation of the sanitary sewer system to arrive at a "before" market value of $152,000. Estrada estimated an "after" market value by doing a "matched pair" analysis comparing 5 pairs of sales of residential property in North Branford in the period October 1993 through May 1994. Each pair consisted of properties deemed comparable except that one was served by a septic system and the other by a sanitary sewer. Estrada concluded that there was "no discernible difference" in sale prices that can be attributed to the presence of sanitary sewers. He then went on to make an adjustment based on "the fact that some segment of the market could feel more secure with a sanitary system." Estimating the cost of install a septic system on the subject property at $7,500, then deducting the cost to connect the dwelling to the sanitary sewer, Estrada calculated the cost difference as $7,000.00. Based on his market data and analyses, he decided a realistic increment in value to the subject property resulting from the installation of sanitary sewers was approximately 25 percent of the total cost of sewer installation which, rounded off, he valued at $2000. (Exhibit H, p. 14). Estrada also did an analysis of an alleged neighborhood "stigma" and concluded that "no significant evidence exists as to the presence of a stigma." (Exhibit I, p. 2). Estrada estimates that the "after" value of the subject property was $154,000. He concludes that the special benefit derived from the availability of a sanitary sewer system is: two thousand ($2,000) dollars.
The defendant's appraiser, Glendenning, first estimated the "Aftervalue" utilizing three comparable sales, all with sanitary sewer service, occurring in North Branford in 1994 and 1995, as $160,000.
To estimate the "Before" value, Glendinning first estimated the cost to replace the existing system in current dollars. Then he subtracted that cost from his estimated "Aftervalue." Finally, he made a deduction for "neighborhood stigma." To establish this deduction, Glendinning used a "paired sales analysis" comparing "proximate" to "remote" sales of properties in North Branford just prior to the 1989 DEP order. The estimated percentage deduction arrived at was 4 percent. His estimated "before" valuation, rounded, was $133,000.
Subtracting his "before" value of $133,000 from his "after" value of $160,000, he arrived at a "sewer benefit" of $27,000. The court finds this estimate excessive. CT Page 11558
 VII
The court finds the plaintiff's appraisal flawed in three respects. First, it fails to recognize a "neighborhood stigma", depressing fair market value; second, its cost estimate of $7,000 for septic system replacement is low and moreover requires an assumption that plaintiff could obtain approval from the East Shore District Health Department for such proposed repair; third, its 75 percent discount of the $7,000 net cost to replace the septic system is excessive.
The court is persuaded that prior to the installation of a sanitary sewerage system, there was a "neighborhood stigma" depressing neighborhood property values and that the plaintiff's property was not immune to such stigma. Moreover, the size and configuration of plaintiff's lot, the age of the existing system, the difficulties of designing a replacement septic system capable of meeting code requirements, the limitation the existing system imposes on use and occupancy of the dwelling were realities a prudent buyer would take into consideration in formulating an offer for the subject property, and would exert a depressing effect on the value of the subject property.
The plaintiff offered insufficient evidence in support of her claim of $7,500 as her cost to install a septic system on the property. The defendant's witness, Mr. Criscuolo, presented a much more detailed analysis of the problem and estimated the cost for installation of an expanded septic system as $22,736.00. While the court does not adopt the defendant's cost estimate, said estimate and the report supporting it diminished the credibility of plaintiff's estimate.
Plaintiff's 75 percent discount of the $7,000 cost to replace is excessive. Given the age of plaintiff's septic system, its capacity acting as a brake on numbers of occupants of the residence, its non-conformity to code, the size and configuration of the lot, discount of that magnitude is unwarranted.
The court finds that the plaintiff has failed to rebut the presumption of the regularity, validity and correctness of the special benefit assessment at issue.
The court finds that defendants have failed to establish that the special benefit assessment should be altered upward. CT Page 11559
Weighing the evidence presented, the court finds an increase in the market value of the subject property caused by the installation of a sanitary sewerage system to be $12,300.
The court finds the special benefit accruing to the plaintiff's property by virtue of the installation of the said sanitary sewerage system is in the amount of $12,300 and the assessment is confirmed.
This appeal, accordingly, is dismissed.
Downey, J.